# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

JAUNNA BATTY                                                    PLAINTIFF

V.                          CASE NO. 3:19-CV-00242-JTK

ANDREW SAUL,
**Commissioner of Social Security Administration**[1]              DEFENDANT

## <u>ORDER</u>

## I.   <u>Introduction</u>:

Plaintiff, Jaunna Batty ("Batty"), applied for disability benefits on August 9, 2017, alleging a disability onset date of June 14, 2017. (Tr. at 11). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Batty's application. (Tr. at 22). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Batty has requested judicial review.

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

## II.   <u>The Commissioner's Decision</u>:

The ALJ found that Batty had not engaged in substantial gainful activity since the alleged onset date of June 14, 2017. (Tr. at 14). The ALJ found, at Step Two of the sequential five-step analysis, that Batty had the following severe impairment: degenerative disc disease. *Id*.

At Step Three, the ALJ determined that Batty's impairments did not meet or equal a listed

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

impairment. (Tr. at 14). Before proceeding to Step Four, the ALJ determined that Batty had the residual functional capacity ("RFC") to perform work at the sedentary level, with additional limitations. *Id.* She is limited to occasional stooping, crouching, bending, kneeling, crawling, and balancing; she can understand, remember, and carry out detailed instructions and respond to changes within the workplace; and in one of the upper extremities, Batty would be able to utilize a cane. *Id.*

The ALJ found that Batty was able to perform past relevant work as a medical transcriber. (Tr. at 21). Therefore, the ALJ found that Batty was not disabled. *Id.*

## III.   Discussion:

### A.   Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

### B. Batty's Arguments on Appeal

Batty contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: 1) the ALJ did not give proper weight to the treating providers' medical

opinions; 2) the ALJ did not fully develop the record; 3) the RFC did not incorporate Batty's limitations; and 4) the ALJ erred at Step Five. The Court agrees that the ALJ failed to properly weigh the medical opinions.

Batty suffered from back and hip pain that radiated to her legs and caused incontinence. Two lumbar MRIs from 2016 and 2017 showed mild to marked conditions, with nerve root compression in the lumbar spine.[3]  (Tr. at 433-441). Batty testified that the pain was unpredictable and debilitating. (Tr. at 33-50). She said she needed to sit and shift positions and rest and elevate her legs to get through the pain. *Id*. She said that she tried to get an accommodation at her last job to allow for a sit-stand option or for less walking on the job, but that was denied. *Id*. Batty tried all kinds of treatment; she used a TENS unit, she did physical therapy, she had injections, she had traction, she took pain medications, she saw specialists, and her doctors discussed surgery on her lumbar spine as a "last resort." *Id*. The treatment modalities offered only temporary relief. *See O'Donnell v. Barnhart*, 318 F.3d 811, 817 (8th Cir. 2003)(ALJ improperly discredited claimant in spite of aggressive treatment).

Batty said she tried to do daily activities like chores and cooking, but had to pace herself take breaks, and it would take a week to clean two rooms of her house. (Tr. at 33-50). She had to use the motorized cart when shopping for groceries. *Id*. She had to sit down to cook pre-packaged meals. *Id*. She used a cane everywhere she went, but still, she experienced severe pain throughout the day. *Id*.

---

[3] Radicular pain is often secondary to compression or inflammation of a spinal nerve. When the pain radiates down the back of the leg to the calf or foot, it would in lay terms be described as sciatica. This type of pain is often deep and steady, and can usually be reproduced with certain activities and positions, such as sitting or walking. https://www.spine-health.com/conditions/lower-back-pain/lumbar-radiculopathy.

On October 16, 2017, Batty saw neurosurgeon Robert Abraham, M.D., upon the recommendation of her doctor. (Tr. at 523-526). While the ALJ pointed out that she saw Dr. Abraham only once, Batty testified that she had a follow-up visit with him a month after the hearing date. (Tr. at 38-40). Moreover, Dr. Abraham's staff saw Batty routinely. At appointments with Nurse Carrie Wells from Dr. Abraham's clinic in 2018, Nurse Wells found positive-straight leg raises, and she noted muscle spasms and throbbing and burning radiating pain. (Tr. at 527-533). She gave Batty a lidocaine injection. *Id*.

On June 26, 2017, Batty saw Joseph Yao, M.D., an orthopedic specialist. (Tr. at 499-501). Batty reported constant back pain aggravated by walking, standing, and squatting. *Id*. Dr. Yao noted a previous lumbar surgery and three total hip replacements, which took place before the relevant time-period. *Id*. Dr. Yao observed reduced range of motion and back spasms. *Id*. He diagnosed marked canal stenosis and disc bulges. *Id*. He said that even fusion surgery may require a second fusion and that delaying surgery as long as possible was the best course. *Id*. He restricted Batty from working for six months. *Id*.

Dr. Abraham filled out a medical source statement on September 27, 2018, in which he said Batty could not even perform sedentary work based on his and his staff's evaluation of her condition. (Tr. at 506-509). He said she would only be able to maintain concentration and attention for 15 minutes due to side effects from pain medication.[4] *Id*. Dr. Abraham said Batty would need to lie down every 1-2 hours during the day. *Id*. The ALJ gave this opinion little weight. (Tr. at 19). A treating physician's opinion accompanied by medically acceptable clinical or diagnostic data is

---

[4] Batty said she could not tolerate narcotics and experienced side effects from other pain medications. (Tr. at 16-20).

4

entitled to controlling weight. *Baker v. Apfel*, 159 F. 3d 1140, 1145-46 (8th Cir. 1998). A physician's opinion with a specialty in the practice area specific to the claimant's impairment deserves even more weight. *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010). The ALJ did not give sufficient reasons for discounting Dr. Abraham's opinion, even though it was bolstered by the clinic notes from his own staff, as well as two MRI studies.

The ALJ also gave the opinion of Peggy Darty, APRN, little weight. (Tr. at 20). She saw Batty throughout 2017 and 2018 and Darty ordered the second MRI. (Tr. at 366-367, 514-517). Darty's statement, consistent with Dr. Abraham's, limited Batty to less than sedentary work; Darty wrote that Batty would require a cane, would have attention problems due to pain, and would miss four days of work per month. *Id*. Although this opinion was consistent with the medical evidence as a whole, the ALJ discounted it.[5]

Finally, the ALJ did not even describe the weight he assigned to the non-examining state-agency physicians' opinions, and then, he assigned an RFC contrary to their findings. (Tr. at 20). The ALJ erred by not giving appropriate weight to the medical opinions.

## IV.   Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ did not properly weigh the medical opinions. The decision is hereby reversed and the case remanded with instructions for further review.

---

[5] Batty's PCP also reviewed the medical record, including the lumbar MRI, and suggested surgery right away. (Tr. at 45).

5

IT IS SO ORDERED this 1st day of July, 2020.

_____

UNITED STATES MAGISTRATE JUDGE